[Cite as *State v. Wolters*, 2022-Ohio-538.]

COURT OF APPEALS
GUERNSEY COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. Earle E. Wise, Jr., P.J. |
|     Plaintiff-Appellee | Hon. William B. Hoffman, J.<br>Hon. John W. Wise, J. |
| -vs- | |
| | Case No. 21CA000008 |
| RONALD WOLTERS | |
|     Defendant-Appellant | O P I N I O N |

CHARACTER OF PROCEEDINGS:    Appeal from the Guernsey County Court
of Common Pleas, Case No. 20-CR-64

JUDGMENT:    Affirmed

DATE OF JUDGMENT ENTRY:    February 24, 2022

APPEARANCES:

For Plaintiff-Appellee

JASON R. FARLEY
Assistant Guernsey County Prosecutor
627 Wheeling Avenue
Cambridge, Ohio 43725

For Defendant-Appellant

MARK E. KAIDO
Gottlieb, Johnson, Beam &
Dal Ponte, LLC – Attorneys at Law
320 Main Street
P.O. Box 190
Zanesville, Ohio 43701

*Hoffman, J.*

{¶1}   Defendant-appellant Ronald L. Wolters appeals the judgment entered by the Guernsey County Common Pleas Court convicting him of three counts of rape (R.C. 2907.02(A)(1)(b)) and eight counts of gross sexual imposition (R.C. 2907.05(A)(4)) and sentencing him to an aggregate term of incarceration of life imprisonment with parole eligibility after seventy-five years.  Plaintiff-appellee is the state of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶2}   Appellant is the step-grandfather of the five-year-old victim in this case. Appellant and his wife sometimes provided childcare for the victim, and the victim called them "nana" and "pap pap."  The victim had her own room in Appellant's home.  The victim's mother did not have a driver's license, and Appellant and his wife often provided transportation for the victim and her mother.

{¶3}   During the summer of 2019, the victim returned home from spending the weekend at Appellant's house.  When her mother asked how the weekend went, the victim did not answer.  The next day, the victim told her mother Appellant "put his wee wee in her cookie."  Tr. 730.  The victim's mother called their family doctor, and was instructed to take the victim to Nationwide Children's Hospital in Columbus for an examination.  The victim's mother failed to do so, lacking transportation other than Appellant and his wife.

{¶4}   After the disclosure of sexual activity with Appellant, the victim's mother began noticing the victim touching her vaginal area on top of her clothes.  About six weeks after the victim disclosed the incident to her mother, the victim was  both physically examined and interviewed at the Guernsey County Children's Advocacy Center.

{¶5} The victim was interviewed by Kristine Myers. The victim told Myers she did not want Appellant to get beat up in jail. When asked if anyone had touched her private parts, the victim said pap pap has touched her "cootie," pointing to her vaginal area. The victim told Myers she plays "tinkle man" with Appellant when they are having sex. The victim said Appellant's "tinkle" is his arm or hand, which he puts on her back when they have sex. The victim stated Appellant touched her vagina with his finger, on the inside. She also stated Appellant touched the inside of her vagina with his penis. She stated she did not have on any clothes when Appellant touched her vagina. When asked how many times Appellant had sex with her, the victim held her hands about shoulder distance apart, without stating a number. The victim said they had sex "a lot" of times. The victim stated Appellant had sex with her in her room at his house, and also in nana's room. She stated Appellant had his shirt on but not his pants. He would lay down on the bed, and she would get on top. Appellant then had "ejections" on his leg. In addition to touching her, Appellant had the victim rub his penis. She and Appellant would watch television, then have more sex.

{¶6} Because the victim did not tell Myers how many times they had sex, Myers counted out ten colored pencils and asked the victim to use the pencils to count out how many times she and Appellant had sex. The victim counted out eight colored pencils. Myers testified at trial if she could do the interview over again, she would not have introduced the pencils because the victim had already established it happened more than one time, and Myers was unsure what would have happened had she laid out thirty pencils instead of ten pencils.

**{¶7}**   Elisha Clark, a nurse practitioner at the Children's Advocacy Center, conducted a physical examination of the victim.  The victim told Clark she was there because Appellant put his fingers and "pee pee" in her "cookie" at least eight different times, and grabbed her butt several times.  Clark found three notches, or partial tears, on the victim's hymen.  Using the face of a clock for reference, the notches were found at 4:00, 6:00 and 9:00.  Any notches located between 3:00 and 9:00 can be indicative of sexual abuse.  Further, the victim experienced urinary incontinence during the exam despite having used the restroom before the exam.  The victim stated this had been happening since pap pap put his wee wee in her cookie.

**{¶8}**   Appellant was indicted by the Guernsey County Grand Jury on eight counts of rape and eight counts of gross sexual imposition on February 26, 2020.  A warrant was issued for his arrest.  Lt. Sam Williams made contact with Appellant by telephone on February 27, 2020.  Appellant indicated he would turn himself in the next day, Friday, February 28, 2020.  Appellant did not turn himself in.  Lt. Williams went to Appellant's home on Monday.  Appellant was not home, but Appellant's wife indicated they were aware of the warrant and she had spoke to Appellant.  Appellant turned himself in on March 5, 2020.

**{¶9}**   While in jail, Appellant made several phone calls, which were recorded. Appellant asked his wife to talk to the victim, and to ask her (1) did this happen every time, and (2) did grandpa ever hurt you.  Appellant told his wife the charges included eight counts of something which never happened and seven counts which were overcharged. In a second call to his wife, Appellant asked her to find out if the victim was saying it happened all those times or if it was the prosecutor, because if it was the prosecutor,

fourteen of the sixteen counts would have to be dropped.  In another phone call to his aunt, Appellant stated fourteen of the charges did not happen.

{¶10}  The case proceeded to jury trial in the Guernsey County Common Pleas Court.  Prior to trial, the trial court held an in camera hearing and found the victim competent to testify at trial.  The trial court allowed the victim to testify via closed circuit television.  The victim testified at trial Appellant put his penis in her vagina one time, when she was five years old.  She testified Appellant unbuttoned his pants, and his penis came out of his pants.  She tried to get away, but he put up a baby gate to stop her.  The victim testified he threw her on the bed, pushed her shins down with his knees, and pressed his body down on top of her.  She testified she told him to stop.

{¶11}  The jury found Appellant guilty of three of the eight rape charges, and of all eight charges of gross sexual imposition.  The trial court sentenced Appellant to a term of life imprisonment with parole eligibility in 25 years for each of the three counts of rape, to be served consecutively.  The trial court sentenced Appellant to sixty months incarceration for each conviction of gross sexual imposition, to be served concurrently to each other and concurrently to the rape sentences, for an aggregate term of incarceration of life with parole eligibility in 75 years.

{¶12}  It is from the April 8, 2021 judgment of the trial court Appellant prosecutes this appeal, assigning as error:


I. THE TRIAL COURT ERRED IN DENYING APPELLANT'S THREE

CRIM. R. 29 MOTIONS FOR A JUDGMENT OF ACQUITTAL, SINCE THE

STATE FAILED TO PROVIDE SUFFICIENT EVIDENCE TO PROVE EACH CHARGE BEYOND A REASONABLE DOUBT.

II. THE TRIAL COURT ERRED IN FINDING THE APPELLANT GUILTY OF THREE COUNTS OF RAPE AND EIGHT COUNTS OF GROSS SEXUAL IMPOSITION, BECAUSE THE JURY'S VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND THE EVIDENCE WAS INSUFFICIENT.

III. THE TRIAL COURT ABUSED ITS DISCRETION BY DETERMINING THAT N.H. WAS COMPETENT TO GIVE TESTIMONY AT TRIAL.

IV. THE TRIAL COURT VIOLATED MR. WOLTERS' RIGHT TO CONFRONTATION BY PERMITTING N.H. TO TESTIFY VIA CLOSED CIRCUIT VIDEO WHERE THE REQUIREMENTS UNDER ORC § 2945.481(E) WERE NOT SUPPORTED BY COMPETENT AND CREDIBLE EVIDENCE.

V. THE TRIAL COURT ABUSED ITS DISCRETION AND PREJUDICED MR. WOLTERS BY GIVING AN IMPROPER CONSCIOUSNESS OF GUILT JURY INSTRUCTION OVER THE DEFENSE'S OBJECTION.

I., II.

{¶13} We address Appellant's first and second assignments of error together, as they raise related issues of whether the judgment convicting Appellant of three counts of

rape and eight counts of gross sexual imposition is against the manifest weight and sufficiency of the evidence. Appellant argues the victim's testimony was contradictory and not credible, and the evidence to support all but a single count of rape was insufficient, and also against the weight of the evidence.

**{¶14}** We note at the outset the State did not provide this Court with a statement of facts in its brief, and further responded to Appellant's argument without citing to facts in the record, instead arguing in conclusory fashion the judgment is not against the manifest weight or sufficiency of the evidence.[1]

**{¶15}** In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St. 3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541, *quoting State v. Martin*, 20 Ohio App. 3d 172, 175, 485 N.E.2d 717 (1983).

**{¶16}** An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks,* 61 Ohio St. 3d 259, 574 N.E.2d 492, paragraph two of the syllabus (1991).

---

[1] As the assigned writer of this opinion, I find Appellee's response of little, if any, value in analyzing Appellant's first and second assignments of error.

**{¶17}** Appellant was convicted of three counts of rape in violation of R.C. 2907.02(A)(1)(b):

> (A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:
>
> (b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.

**{¶18}** "Sexual conduct" is defined by R.C. 2907.01(A):

> "Sexual conduct" means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.

**{¶19}** At trial, the victim testified to only one incident in which Appellant engaged in vaginal intercourse with her. However, the forensic interview of the victim was recorded, and the video was played for the jury and admitted into evidence at trial. During the interview, the victim stated Appellant touched her vagina with her finger, on the inside.

She also stated Appellant touched the inside of her vagina with his penis. When asked how many times Appellant had sex with her, the victim held her hands about shoulder distance apart, without stating a number. She said they had sex "a lot" of times.[2] The victim stated Appellant had sex with her in her room at his house, and also in nana's room. She stated Appellant had his shirt on but not his pants. He would lay down on the bed, and she would get on top. Appellant then had "ejections" on his leg. She and Appellant would watch television, then have more sex.

{¶20} While the jury may take note of inconsistencies and resolve or discount them accordingly, such inconsistencies alone do not render a conviction against the manifest weight or sufficiency of the evidence. *State v. Craig*, 10th Dist. Franklin App. No. 99AP-739, 2000 WL 297252, (Mar. 23, 2000) *3, *quoting State v. Nivens*, 10th Dist. Franklin App. No. 95APA09-1236, 1996 WL 284714, (May 28, 1996). In a case involving inconsistencies in the testimony of a seven-year-old child victim, this Court noted, "The jury was free to use their life experiences in assessing the testimony of a child verses an adult and draw its conclusion." *State v. Allen*, 5th Dist. Stark No. 2021CA00051, 2022-Ohio-268, ¶ 31. We therefore find inconsistencies in the five-year-old child victim's statements regarding the sexual conduct does not render the judgment against the manifest weight or sufficiency of the evidence.

{¶21} Further, although not conclusive of sexual abuse, there was physical evidence which corroborated the jury's finding of guilt on three counts of rape. Elisha Clark, a nurse practitioner at the Children's Advocacy Center, conducted a physical examination of the victim. Clark found three notches, or partial tears, on the victim's

---

[2] The victim's statement they had sex a lot of times does not distinguish whether the sex involved was sexual conduct or sexual contact.

hymen. Using the face of a clock for reference, she testified the notches were found at 4:00, 6:00 and 9:00. She testified any notches located between 3:00 and 9:00 can be indicative of sexual abuse. Further, the victim experienced urinary incontinence during the exam despite having used the restroom before the exam. The victim stated this had been happening since pap pap put his wee wee in her cookie. Although Appellant presented expert testimony to challenge Clark's findings, we find there was sufficient evidence from the victim's statements made in her forensic interview and the physical findings by Clark to support the convictions of three counts of rape. Further, we find the jury did not lose its way in convicting Appellant of three counts of rape. The judgment convicting Appellant of three counts of rape is supported by sufficient evidence, and is not against the manifest weight of the evidence.

{¶22} Appellant was also convicted of eight counts of gross sexual imposition in violation of R.C. 2907.05(A)(4):

> (A)No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:
>
> (4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person.

{¶23} "Sexual contact" is defined by R.C. 2907.01(B):

"Sexual contact" means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person.

**{¶24}** During the forensic interview, the victim did not tell Myers how many times she and Appellant had sex, but rather used the general term "a lot" and held her hands about shoulder width apart when asked how many times the sexual abuse occurred. Myers counted out ten colored pencils and asked the victim to use the pencils to count out how many times she and Appellant had sex without differentiating between the number of occasions when sexual conduct versus sexual contact occurred. The victim counted out eight colored pencils.   The victim also told Clark she was at the Child Advocacy Center because Appellant put his fingers and penis in her vagina at least eight times.  Myers testified at trial if she could do the interview over again, she would not have introduced the pencils because the victim had already established it happened more than one time, and Myers was unsure what would have happened had she laid out thirty pencils instead of ten pencils.  However, we find the victim's statement it happened eight times is sufficient evidence, if believed by the jury, to support the convictions of eight counts of gross sexual imposition.

**{¶25}** The jury appears to have rejected the number of "eight times," as produced by the colored pencils and the victim's statement to Clark, in its deliberations as to rape, convicting Appellant of three counts while acquitting him of five.  However, although the victim did not differentiate between sexual conduct and sexual contact when she stated

she and Appellant had sex "a lot" of times, or when she stated they had sex eight different times, the jury could conclude based on her statements Appellant engaged in sexual contact with the victim eight times, while he only engaged in sexual conduct with the victim three times, as supported by the physical evidence in the case.

**{¶26}** The victim testified to numerous separate acts which would constitute sexual contact but not sexual conduct.  The victim stated Appellant touched her butt "several times."  We recognize the victim did not specifically clarify whether these touchings were separate in time and distinct from the three rape convictions.  The victim also stated in her interview Appellant had her touch his penis, though again not indicating whether this touching was separate in time and distinct from the other incidents of sexual contact.  In addition, Appellant stated in his phone call to his wife from the jail the charges included seven counts which were overcharged.  The jury could draw the conclusion from this statement Appellant believed seven of the rape charges were overcharged, but impliedly admitted to engaging in sexual contact with the victim on at least seven additional occasions. We therefore find the jury's verdict was not against the manifest weight of the evidence as to eight counts of gross sexual imposition.

**{¶27}** The first assignment and second assignments of error are overruled.

III.

**{¶28}** In his third assignment of error, Appellant argues the trial court erred in finding the victim competent to testify at trial.

**{¶29}** Every person is competent to be a witness except those of unsound mind, and children under ten years of age who appear incapable of receiving just impressions of the facts respecting which they are examined, or of relating them truly. Evid.R. 601(A).

**{¶30}** In determining whether a child under the age of ten is competent to testify, the trial court must consider: (1) the child's ability to receive accurate impressions of fact or to observe acts about which he or she will testify, (2) the child's ability to recollect those impressions or observations, (3) the child's ability to communicate what was observed, (4) the child's understanding of truth and falsity, and (5) the child's appreciation of his or her responsibility to be truthful. *State v. Frazier,* 61 Ohio St.3d 247, 574 N.E.2d 483 (1991). To reverse a finding of competency, we must find the trial court abused its discretion. *State v. Lewis*, 4 Ohio App.3d 275, 448 N.E.2d 487 (3rd Dist. 1982).

**{¶31}** The transcript of the in camera competency hearing was filed under seal with this Court. Upon review of the transcript, we find the child victim demonstrated an ability to receive accurate impressions of fact, was able to recollect impressions or observations, could communicate what was observed, understood truth and falsity, and appreciated her responsibility to be truthful. The trial court did not abuse its discretion in finding her competent to testify.

**{¶32}** Appellant further argues her inconsistent and contradictory testimony at trial demonstrates she was not competent to testify.

**{¶33}** In *State v. Jones*, 12th Dist. Brown No. CA2000-11-032, 2001 WL 1402638 at *6, our brethren in the Twelfth District noted:

> [I]t is not the role of the trial judge to determine that everything a child will testify to is accurate, but whether the child has the intellectual capacity to accurately and truthfully recount events. *State v. Leach* (Feb. 20, 2001), Clermont CA2000-05-033, unreported, at 5. Any inconsistencies between

[a child's] trial testimony and the testimony of other witnesses relate to [the child's] credibility, not [their] competency. See *id.; State v. Rayburn* (Apr. 24, 2000), Clinton CA99-03-005, unreported, at 6. [The child's] credibility was for the jury's consideration.

**{¶34}** We agree with the reasoning of the Twelfth District, and find any inconsistencies and contradictions in the victim's testimony went to her credibility, not to her competency.

**{¶35}** The third assignment of error is overruled.

IV.

**{¶36}** In his fourth assignment of error, Appellant argues the trial court erred and denied his right to confront witnesses against him by allowing the victim to testify via closed circuit television pursuant to R.C. 2945.481(E), which provides:

(E) For purposes of divisions (C) and (D) of this section, a judge may order the testimony of a child victim to be taken outside the room in which the proceeding is being conducted if the judge determines that the child victim is unavailable to testify in the room in the physical presence of the defendant due to one or more of the following:

(1) The persistent refusal of the child victim to testify despite judicial requests to do so;

(2) The inability of the child victim to communicate about the alleged violation or offense because of extreme fear, failure of memory, or another similar reason;

(3) The substantial likelihood that the child victim will suffer serious emotional trauma from so testifying.

**{¶37}** The Ohio Supreme Court has held testimony of a child victim by videotaped deposition does not violate the Confrontation Clause, as long as the defendant has an opportunity to view the child and the child's demeanor, and has a full opportunity to cross-examine the child. *State v. Self*, 56 Ohio St. 3d 73, 77, 564 N.E.2d 446 (1990). We find the procedure employed in the instant case similarly did not violate the Confrontation Clause, as Appellant was able to see the victim's demeanor, and his counsel had a full opportunity to cross-examine the child. *See State v. Lukacs*, 1st Dist. Hamilton No. C-090309, 188 Ohio App.3d 597, 2010-Ohio-2364, 936 N.E.2d 506, ¶ 30 (allowing victim's brother to testify by remote video outside the courtroom did not violate the Confrontation Clause where defendant had ample opportunity to cross-examine the witness and see him over the live video feed).

**{¶38}** The standard of review in determining whether a trial court has made sufficient findings under R.C. 2945.481 to permit a child to testify via closed-circuit video is whether those findings are "supported by competent, credible evidence." *State v. Powers,* 4th Dist. Scioto No. 19CA3868, 2020-Ohio-7042, ¶ 61.

**{¶39}** After an evidentiary hearing, the trial court found requiring the victim to testify in court would further traumatize her, and would raise the risk factors for other

mental distress issues, including depression and anxiety. The trial court concluded there was a substantial likelihood the victim would suffer serious emotional harm if she testified in court in front of Appellant.

{¶40} At the hearing, the State presented the testimony of Elisha Clark, the nurse practitioner who conducted the physical examination of the victim. Clark observed the interview with the child. Clark testified through her training, education, and experience she learned how to identify a child who may be suffering emotionally from having to speak about a trauma and who might be further traumatized by having to speak about the abuse suffered. She testified such signs include a child victim unable to use words and instead pointing to their genitals, talking about feeling sad or mad, pointing to a doll instead of themselves, covering their face, or appearing tearful. Clark testified during the interview, the victim in this case pointed to her genitals instead of using words. The victim told the interviewer when the abuse happened, it made her feel sad. In Clark's opinion, the victim may have a hard time articulating what happened to her in front of Appellant due to the victim's age and her relationship to Appellant. Clark further stated if the victim testified in front of Appellant, there was a substantial likelihood the victim could suffer serious emotional trauma in the future, creating a risk of the victim later developing post-traumatic stress disorder, anxiety, or depression.

{¶41} We find the trial court's finding was supported by competent, credible evidence presented through the testimony of Elisha Clark. The fourth assignment of error is overruled.

V.

**{¶42}** In his fifth assignment of error, Appellant argues the trial court erred in giving the following jury instruction on consciousness of guilt:

Now, ladies and gentlemen, testimony has been admitted indicating that the defendant resisted arrest by failing to turn himself in to law enforcement despite his promise to do so. You are instructed that this conduct alone does not raise a presumption of guilt, but it may tend to indicate the defendant's consciousness or awareness of guilt.

If you find that the facts do not support the defendant resisted arrest by failing to turn himself in to law enforcement despite his promise to do so, or if you find that some other motive prompted the defendant's conduct, or if you are unable to decide what the defendant's motivation was, then you should not consider this evidence for this purpose.

However, if you find that the facts supported the defendant engaged in such conduct, and if you decide that the defendant was motivated by a consciousness or an awareness of guilt, you may, but are not required to, consider that evidence in deciding whether the defendant is guilty of the crimes charged. You alone will determine what weight, if any, to give to this evidence.

**{¶43}** Tr. 1562-63.

**{¶44}** A reviewing court may not reverse a conviction in a criminal case due to jury instructions unless it is clear the jury instructions constituted prejudicial error. *State v. McKibbon*, 1st Dist. Hamilton No. C–010145, 2002–Ohio–2041, ¶ 4, *citing State v. Adams*, 62 Ohio St.2d 151, 154, 404 N.E.2d 144 (1980). In order to determine whether an erroneous jury instruction was prejudicial, a reviewing court must examine the jury instructions as a whole. *State v. Van Gundy,* 64 Ohio St.3d 230, 233–234, 594 N.E.2d 604 (1992). Pursuant to Crim. R. 52(A), "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded."

**{¶45}** Appellant argues the instruction was improper because he took no affirmative steps to avoid apprehension.  He argues based on his testimony at trial, he was the sole bread winner for his household, and he maintained contact with law enforcement while he finished a job assignment in Cleveland before turning himself in. The State argues Appellant was ultimately arrested in Cleveland, a representation which is not supported by the record.

**{¶46}** The record reflects Appellant told law enforcement he would turn himself in on February 28, but instead stayed in Cleveland and did not turn himself in until March 5, 2020.  The trial court's instruction accurately portrayed the evidence regarding Appellant's failure to turn himself in on the date he promised law enforcement he would do so.  The jury was able to hear Appellant's explanation for remaining in Cleveland for a work obligation, and the trial court accurately instructed the jury if they found Appellant did not resist arrest by failing to turn himself in as promised, or the jury found some other motive than guilt prompted him to fail to turn himself in, or the jury was unable to determine Appellant's motivation, they should not consider this evidence as consciousness or

awareness of guilt.  Based on the totality of the instruction, we find the jury instruction was appropriate and not prejudicial in this case.

**{¶47}**  The fifth assignment of error is overruled.

**{¶48}**  The judgment of conviction and sentence of the Guernsey County Common Pleas Court is affirmed.


By: Hoffman, J.

Wise, Earle, P.J.  and

Wise, John, J. concur