[Cite as *State v. Smith*, 2023-Ohio-3919.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin, J. |
| | : | Hon. Andrew J. King, J. |
| -vs- | : | |
| | : | |
| A'JANI SMITH | : | Case No. 22CA00155 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:     Appeal from the Court of Common
Pleas, Case No. 2022-CR-0307A


JUDGMENT:     Affirmed


DATE OF JUDGMENT:     October 27, 2023


APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

KYLE L. STONE                            PATRICK L. CUSMA
PROSECUTING ATTORNEY                      116 Cleveland Avenue NW
                                         Suite 600
  BY:  Christopher A. Piekarski          Canton, OH  44702
        110 Central Plaza South, Suite 510
        Canton, OH  44702-1413

*King, J.*

{¶ 1}   Defendant-Appellant A'jani Smith appeals the November 10, 2022 judgment of conviction and sentence of the Stark County Court of Common Pleas. Plaintiff-Appellee is the state of Ohio.

### FACTS AND PROCEDURAL HISTORY

{¶ 2}   On January 7, 2022, a group of people gathered at the home of K.T. on Gilbert Circle in Canton, Ohio, a high-crime area. K.T. lived with her four children, ages 17, 13, 10, and 3. The victim in this matter, T.L. was the father of the three-year old.

{¶ 3}   On the evening of January 7, T.L went to K.T.'s home after he got off work. When T.L. arrived, K.T.'s children were present along with friends of D.M., K.T.'s oldest child. D.M.'s friends were N.R., M.C., and M.M. After T.L. arrived, he and K.T. went to the liquor store and returned with some Hennessy cognac. K.T.'s sister M.H. showed up shortly thereafter with food. The adults settled in the living room to drink and eat, and the teenagers hung out in the kitchen. M.M. was drinking alcohol and the other teens were smoking marijuana.

{¶ 4}   At some point 16-year-old Craig Avery showed up as well. He had been to K.T.'s home at least once before. As the evening wore on, Avery and T.L. became hostile with one another over Avery's reluctance to tell T.L. who his parents are. No physical altercation took place, however, the two spent some time "mean-mugging," or staring one another down and bickering.

{¶ 5}   While that was going on, T.L.'s friend K.H. showed up to by some marijuana for T.L. Shortly thereafter, Avery called his friend, 17-year-old Smith to come over.

{¶ 6}   Around midnight, T.L. and K.T. decided to go get beer before the local drive through closed. It was around that time that Smith arrived, wearing all black and a mask. K.T. told both Smith and Avery they could not stay at her home and ordered them to leave. T.L., K.T., M.C., Smith, and Avery all went outside. M.H. stood in the front doorway looking outside. T.L. walked to the driver's side of his car which was parked in the driveway. K.T. again told Smith to leave and to get off her property. Instead of leaving, Smith responded by pulling a gun on K.T. and pointing it at her face.

{¶ 7}   Seeing what was going on, T.L. moved toward Smith and K.T. and yelled for Smith to get the gun out of K.T.'s face. At that point Avery was in the street by his car which was parked across from the back end of T.L.'s car. As T.L. approached K.T., Smith ran off and started shooting his gun. Avery started shooting from the street at the same time. The teens then got into two separate stolen vehicles and fled the scene. Traffic cameras captured images of them travelling away from the scene close together and in the same direction.

{¶ 8}   When the shooting started, K.T. and M.C. ran into the house. Once the shooting stopped and K.T. realized T.L. had not come inside, she went outside to investigate. She found T.L. dying on the ground in front of his car.

{¶ 9}   Police and EMS arrived to process the scene and remove T.L.'s body. Police located 17 spent cartridge cases at the scene which were later determined to have come from three different guns. One led bullet core was recovered from inside the trunk of T.L.'s car and another from underneath T.L.'s body. Several bullet holes were found in the front of the house brick, front door, and windows.

{¶ 10} Canton Police Detective Mark Diels spoke with multiple witnesses including K.T. M.C., M.H., D.M., M.M., and N.R. Based on his investigation Diels put together two photo arrays. K.T. identified Avery as one of the shooters and M.H. identified Smith as the other. Of all the witnesses he spoke to, only N.R. said T.L. had a gun.

{¶ 11} Smith was located and interviewed by police on January 25, 2022. Smith denied that Avery had summoned him to appear at K.T.'s home, and contrary to what other witnesses had told police, denied being a close friend of Avery's. According to Smith, he was dropped off in front of K.T.'s home because he wanted to visit a memorial to his recently deceased cousin which was displayed on a pole in front of K.T.'s home. Asked why he decided to visit the pole at midnight, Smith claimed he visited the memorial at all hours.

{¶ 12} Smith said he only went into K.T.'s home because he heard music. He stated he knew some of the teens there but not the adults. Smith said that when he walked into the house, T.L. told him to "get the fuck out." Smith stated with that, he left because he was not staying somewhere he was not wanted. He stated he had left and already crossed the street when he heard gunfire. Upon hearing the gunfire, he claimed he ran on foot from the scene to a friend's house.

{¶ 13} Avery was also interviewed. He denied driving the stolen vehicle, having a gun, or shooting a gun that night. He also never said T.L. pulled a gun on him.

{¶ 14} Canton-Stark County Crime Lab firearms expert Abigail Ilijevski examined the bullets and shell casings found at the scene. After doing so, she entered her findings into the National Integrated Ballistic Information Network or NIBIN. The network can help determine if a firearm has been used in other incidents. Ilijevski later received a potential

match to a Springfield .9mm firearm which was seized in another Ohio county. Iljevski determined to a reasonable degree of scientific certainty that the Springfield weapon was used in this incident. No other firearms were recovered.

{¶ 15} Franklin County Deputy Coroner Dr. Todd Barr examined T.L.'s body. T.L. had three gunshot wounds displaying both entrance and exit wounds. Entrance wounds consisted of one to T.L.'s left chest, one to his left buttock and one just above the back of his right ankle. The chest wound was fatal because the bullet perforated T.L.'s pulmonary arteries. The cause and manner of death were determined to be multiple gunshot wounds and homicide respectively.

{¶ 16} Avery and Smith's cases were bound over to the Stark County Grand Jury which subsequently returned an indictment charging both Avery and Smith with one count each of murder or aiding/abetting murder along with attendant three-year firearm specifications.

{¶ 17} A joint jury trial began on October 31, 2022. The state called 11 witnesses and elicited the above outlined testimony. Smith called three witness, his friends D.M., M.C., and N.R.

{¶ 18} D.M. testified she, N.R., and M.M. never went outside and she did not see what happened outside. She stated she heard 3-4 shots. D.M. testified she never saw T.L. or his friend K.H. with guns that night. She did not know why K.H. showed up, but did know Avery felt like he had to call Smith to come over after K.H. arrived.

{¶ 19} M.C. testified she was outside when the shooting started. She stated Avery fired shots first, but claimed it was after T.L. "clutched" at his pants like he was going to draw a gun. But she did not know if T.L. actually had a gun. M.C. stated she never saw

Smith in possession of a gun or shooting a gun. During trial M.C. said she saw a gun lying on the ground beside T.L. after he was shot, but then admitted that on the night of the incident she told police she never saw T.L. with a gun.

{¶ 20} On direct examination, N.R. testified he watched what happened through the screen door but did not go outside. When police spoke to him after the shooting, however, he stated he was upstairs when the shooting took place. N.R. testified he saw Avery pull a gun first and then T.L. pulled a gun. He testified Smith never pulled a gun. On cross examination N.R. stated he told police that T.L.'s friend K.H. showed up with two guns but on the stand said that was not true. At trial N.R. testified T.L. had a gun but he also admitted he never told police T.L. had a gun.

{¶ 21} The state requested and received a flight instruction. The jury convicted Smith as charged. Smith was later sentenced to 15 years to life with a consecutive 3-year prison term for the firearm specification.

{¶ 22} Smith filed an appeal and the matter is now before this court for consideration. He raises two assignments of error as follow:

I

{¶ 23} "THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION AGAINST THE APPELLANT, AND THE CONVICTION MUST BE REVERSED."

II

{¶ 24} "THE APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED, AND MUST BE REVERSED."

{¶ 25} Smith's two assignments of error are interrelated and will therefore be addressed together. Smith argues the state failed to produce sufficient evidence to prove he murdered T.L. or was complicit in murdering T.L., and the jury lost its way in finding that he did. He argues it was Avery, not himself, who shot T.L. Smith additionally argues the state failed to disprove the matter of self-defense, which advanced by Avery but not Smith, and argues the state failed to prove Avery shot and killed T.L in self-defense. We disagree.

Applicable Law

{¶ 26} On review for sufficiency, a reviewing court is to examine the evidence presented at trial to determine whether such evidence, if believed, would support a conviction. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). See also, *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175.

{¶ 27} The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. Jamison*, 49 Ohio St.3d 182, 552 N.E.2d 180 (1990). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997).

{¶ 28} While the jury may take note of inconsistencies and resolve or discount them accordingly, such inconsistencies alone do not render a conviction against the manifest weight or sufficiency of the evidence. *State v. Wolters*, 5th Dist. No. 21CA000008, 2022-Ohio-538, 185 N.E.3d 601, ¶ 20, citing *State v. Craig*, 10th Dist. Franklin App. No. 99AP-739, 2000 WL 297252, (Mar. 23, 2000) *3.

{¶ 29} Smith was charged with one count of murder and/or aiding or abetting another in doing so pursuant to R.C. 2903.02(A). That section prohibits purposely causing the death of another.

{¶ 30} Complicity is set forth in R.C. 2923.03(A)(2), which states "[n]o person, acting with the kind of culpability required for the commission of any offense, shall * * * "[a]id or abet another in committing the offense[.]" In *State v. McFarland*, 162 Ohio St.3d 36, 2020-Ohio-3343, 164 N.E.3d 316, ¶ 26, the Supreme Court of Ohio recently stated "[t]o "aid or abet" is to " 'assist or facilitate the commission of a crime, or to promote its accomplishment.' " (Quoting *State v. Johnson*, 93 Ohio St.3d 240, 243, 754 N.E.2d 796 (2001)

Smith's Arguments

{¶ 31} Under his sufficiency arguments Smith does not challenge any one element of complicity to murder. Instead, he argues the testimony that he shot T.L. is inconsistent

with the angle or T.L.'s gunshot wounds and the physical evidence, specifically, the position of T.L.'s body. He additionally argues he was not the shooter and that testimony from N.R. and M.C. established Avery shot and killed T.L. in self-defense. Under his manifest weight argument, Smith argues the evidence suggested three firearms were discharged at the scene and this evidence confused the jury causing it to lose its way in convicting him.

### Avery's Self-Defense Claim

{¶ 32} We begin by noting whether or not Avery shot and killed T.L. in self-defense has no bearing on Smith's appeal. Smith may not make arguments on behalf of Avery. Avery advanced the affirmative defense of self-defense, but Smith did not. We therefore decline to address any of Smith's arguments claiming the state failed to disprove Avery's self-defense claim.

### Conflicting Testimony

{¶ 33} Next, Smith argues his witnesses established Avery was the shooter.

{¶ 34} Testimony from the state's witnesses established both Smith and Avery possessed and shot guns. K.T. testified that when she told Smith to get off her property, Smith drew a gun and pointed it at her face. She further testified that when T.L. moved to intervene, Smith ran off while shooting his gun She stated Smith got into a silver van and drove away and Avery got into a black vehicle and drove away. Transcript of Trial, Volume one (T.(I)) 182-185. K.T.'s sister M.H. corroborated K.T.'s testimony and further testified she saw both Smith and Avery shooting guns. T.(I) 213-214.

{¶ 35} Smith cites the testimony of his witnesses N.R. and M.C. which he points out contradicts the testimony of the state's witnesses.

{¶ 36} N.R. testified Avery called Smith to come over after T.L.'s friend K.H. showed up. He stated that Smith showed up about 20 minutes later, came inside, and was "chilling by the steps" with him and Avery. T. (IIIA) 38-43. N.R. further stated Avery said something offensive to T.L and T.L. pushed K.T. out of the way in order to chase Avery out of the house. T. (III).  N.R. testified that once outside, T.L. ran up to Avery, not Smith, that T.L. and Avery both drew guns and that Avery fired first. T. (IIIA) 51.

{¶ 37} M.C, however, testified that just she and Avery were inside sitting on the steps right before K.T. and T.L. were getting ready to leave for the drive through. T.(II) 225. She stated Smith pulled up after she, Avery, T.L. and K.T were already outside. T.(III) 226. M.C. then testified K.T. was in Smith's face yelling at him. According to M.C., K.T. was arguing with Smith when Avery fired shots, and that Avery fired shots at T.L. when it looked like T.L. was "clutching" meanng making a motion like he was going to pull a gun out of his pants. T. (II) 228-231. She further testified she did not see Smith with a gun, and that after shots were fired, Avery and Smith got into the same car and fled the scene. T.(II) 234, 244.

{¶ 38} While there was indeed conflicting testimony, the jury as the trier of fact was free to believe all, part, or none of any witness's testimony. *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964). It is the province of the jury to determine where the truth likely lies when confronted with conflicting statements. *State v. Hunt*, 10th Dist. No. 12AP-1037, 2013-Ohio-5326, ¶ 91.

{¶ 39} We find no evidence in the record to support a conclusion that the jury lost its way in sorting out conflicts in evidence or in making its credibility determinations.

Complicity

{¶ 40} Smith also argues testimony suggests Avery was the shooter because a bullet was found in the trunk of T.L.'s car which was parked in front of where Avery stood shooting from the street, and because of the angle of the gunshot wounds on T.L.'s body. Smith further argues there was no evidence of a plan or discussion between himself and Avery to carry out the shooting.

{¶ 41} Smith was charged with aiding and abetting Avery. It therefore does not matter, which of them fired the fatal bullet. Further, aiding and abetting does not require the state to produce evidence that a defendant specifically entered into a plan with the principal to commit a crime. Rather, the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal. A defendant's intent may be inferred from the circumstances surrounding the crime. *State v. Johnson*, 93 Ohio St.3d 240, 754 N.E.2d 796 (2001), at syllabus.

{¶ 42} In this matter, two of Smith's own witnesses testified Avery called his friend Smith to come over to K.T.'s home after Avery and T.L. became hostile with one another and after T.L.'s friend K.H. showed up. T.(II) 196, 212, T.(IIIA) 39. Testimony further established both Smith and Avery fired shots at T.L. The jury could reasonably infer Avery felt he needed backup for some perceived threat from T.L., called Smith to assist, and Smith cooperated by arriving on the scene with a gun and firing shots at T.L. By doing so, Smith acted purposefully and shared the same criminal intent as Avery.

Shell Casings

{¶ 43} Smith's final arguments pertain to the 17 shell casings found at the scene. According to Smith, the fact that shell casings from three different guns were found at the

scene calls into question the credibility of every eyewitness because no one testified there were three people shooting. He further argues the evidence confused the jury as evidenced by their question: "are all the .9-millimeter casings from the scene from the same gun from Abby Ilijevski for State's Exhibits 1, 2, 3, 4, 5. .9 millimeter 10, 11, 12, 13, 14, 15, 16.?" The trial court directed the jury to rely on their collective memory. T.(IIIB) 93.

{¶ 44} First, as outlined above, the credibility of witnesses and conflicts in evidence are matters for the trier of fact to sort out. Second, Smith's argument that the jury was confused is speculation. There is no conclusive evidence in the question alone which would indicate the jury was confused. Nor is there any evidence on the record to support a conclusion that the jury was confused over the potential number of guns involved.

{¶ 45} Upon review, we find sufficient evidence, if believed, to support Smith's conviction for complicity to murder, and do not find the jury clearly lost its way nor created a manifest miscarriage of justice.

{¶ 46} The judgment of conviction and sentence of the Stark County Court of Common Pleas is affirmed.

By King, J.,

Delaney, P.J. and

Baldwin, J. concur.