[Cite as *State v. Welch*, 2024-Ohio-434.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | Hon. Craig R. Baldwin, J.<br>Hon. Andrew J. King, J. |
| -vs- | |
| | Case No. 23 CAA 07 0040 |
| CALEB C. WELCH | |
| Defendant-Appellant | O P I N I O N |

CHARACTER OF PROCEEDINGS:     Appeal from the Delaware County Court of
                              Common Pleas, Case No. 23 CR I 050240

JUDGMENT:                     Affirmed

DATE OF JUDGMENT ENTRY:       February 6, 2024

APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellant

MELISSA A. SCHIFFEL                   WILLIAM T. CRAMER
Delaware County Prosecutor            470 Olde Worthington Road, Suite #200
                                      Westerville, Ohio 43082
KATHERYN L. MUNGER
Assistant Prosecuting Attorney
Delaware County Prosecutor's Office
145 North Union Street, 3rd Floor
Delaware, Ohio 43015

*Hoffman, P.J.*

{¶1}　Defendant-appellant Caleb Welch appeals the judgment entered by the Delaware County Common Pleas Court convicting him following bench trial of two counts of domestic violence (R.C. 2919.25(A)) and sentencing him to an aggregate term of incarceration of 36 months.　Plaintiff-appellee is the state of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶2}　In 2022, the victim lived in Del-Mor Dwellings, an apartment facility for people with mental illnesses.　The victim's mother and son lived with her, and were at the time named on the lease.　Appellant was also living in the apartment.　Appellant met the victim online while he was in a halfway house, and they began dating.　Appellant was only permitted to live with the victim for 14 days because he was not on the lease.　The building owners refused to add Appellant to the lease because of his past history.

{¶3}　After the first month of living together, the couple began arguing.　Appellant was disrespectful toward the victim's mother, making fun of her health conditions, threatening to put fentanyl in her medication, and threatening to bury her in a river.

{¶4}　During the evening hours of October 26, 2022, the victim went to work cleaning a client's apartment in her job as a home health aide.　Appellant and the victim's son were with her, and they intended to spend the night at the client's home.　The victim and Appellant argued in the kitchen.　Appellant grabbed the victim's face and poked her face.　The victim screamed for help.　Appellant dug his hand into her mouth to prevent her from screaming, causing the victim's mouth to bleed.　The client gave the victim a towel to stop the bleeding, and told her to get out of the situation.

{¶5}　The victim drove home, leaving Appellant and her son at her client's home.　The victim and her mother worked on stopping the victim's bleeding, and then fell asleep.

{¶6} Early the next morning, Appellant returned to the apartment with the victim's son. After the victim's son left for school, Appellant and the victim argued again. The victim tried to walk away. Appellant pushed her to the floor in the hallway, and poked her. Appellant punched the victim with his fist and came down hard on her ribs. The victim's mother attempted to open the door to get help. Appellant closed the door, and the victim's mother fell or was pushed down. A neighbor called 911.

{¶7} When the police arrived, the victim was uncooperative. Initially she was quiet, then she began screaming at police. The victim's mother was transported to the hospital for medical treatment. The property manager asked Appellant to leave the property, and police escorted him off the property. After Appellant left, police returned to the property, and the victim gave a statement.

{¶8} On November 3, 2022, Appellant was indicted in case number 22CR1006101 on one count of domestic violence. The indictment alleged he had two prior domestic violence convictions, elevating the offense to a third-degree felony. He was indicted on May 4, 2023, in case number 23CRI050240 with two counts of domestic violence, both third-degree felonies based on his prior domestic violence convictions. The 2022 case was dismissed, and all filings were transferred to the new case number.

{¶9} During the pendency of the case, Appellant subpoenaed mental health records of the victim from Twin Valley Behavioral Healthcare. The trial court reviewed the requested records *in camera*, and held they were not subject to disclosure to the defense. The trial court preserved the records for appellate review.

{¶10} The case proceeded to bench trial in the trial court. Appellant testified in his own defense. He testified the victim's mother was drunk on October 26 when they

left to go to the victim's client's home.  Appellant testified they argued at the client's house around 11:30 p.m., and the victim began beating herself in the face.  According to Appellant, he put his arms around her to restrain her, and she was not bleeding.  Appellant claimed when the victim stopped beating herself, he and the victim's son left and went to a conference room in the building.  When they returned to the client's apartment, the victim had left in the car.  Appellant and the victim's son walked back to the apartment, but instead of going inside, they slept in the car.  The next morning, they went inside. Appellant testified after the victim's son went to school, he and the victim had another argument.  He denied a physical altercation with the victim, and claimed the victim's mother fell as he was trying to stop him from leaving the apartment.   Appellant testified he asked a neighbor to call 911 because the victim's mother claimed she broke her arm.

{¶11}  The trial court convicted Appellant on both counts of domestic violence.  The trial court sentenced Appellant to 36 months incarceration on each conviction, to be served concurrently.  The trial court terminated Appellant's post-release control on a prior case, and imposed an additional prison term of 708 days, to be served consecutively to the sentences imposed in the instant case.

{¶12}  It is from the July 7, 2023 judgment of the trial court Appellant prosecutes his appeal, assigning as error:


I. APPELLANT'S RIGHTS TO DUE PROCESS REQUIRE THIS COURT TO REVIEW THE VICTIM'S MENTAL HEALTH RECORDS TO DETERMINE WHETHER ANY MATERIAL RECORDS WERE IMPROPERLY SHIELDED FROM THE DEFENSE.

II. APPELLANT'S GUILTY VERDICTS WERE NOT SUPPORTED

BY THE WEIGHT OF THE EVIDENCE.


I.

{¶13} In his first assignment of error, Appellant asks this court to review the victim's mental health records, submitted to the trial court under seal for *in camera* review, to determine whether any material records were improperly shielded from him.

{¶14} "The proper procedure in determining the availability of confidential records is for the trial court to conduct an *in camera* inspection to determine relevancy and necessity, and whether the admission of the records outweighs the confidentiality considerations." *State v. Fuson*, 5th Dist. Knox No. 97CA000023, 1998 WL 518259. (relying upon *Pennsylvania v. Ritchie*, 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987)). The standard of review for materiality is whether there is a reasonable probability, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *State v. Lawson*, 64 Ohio St.3d 336, 343, 595 N.E.2d 902 (1992). A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *State v. Johnston*, 39 Ohio St.3d 48, 61, 529 N.E.2d 898 (1988). The possibility an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish materiality. *State v. Gibbons*, 5th Dist. Stark No. 1998CA00158, 2000 WL 502694.

{¶15} We have reviewed the victim's mental health records, and we find there is not a reasonable probability, had the records been disclosed, the result of the proceeding

would have been different.  We find the trial court did not err in failing to disclose the records to Appellant.

**{¶16}** The first assignment of error is overruled.

II.

**{¶17}** In his second assignment of error, Appellant argues the trial court's judgment convicting him of two counts of domestic violence is against the manifest weight of the evidence.  He argues the trial court erred in finding the victim's testimony more credible than Appellant's testimony.

**{¶18}** In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'"  *State v. Thompkins*, 78 Ohio St. 3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541, *quoting State v. Martin*, 20 Ohio App. 3d 172, 175, 485 N.E.2d 717 (1983).  We note the trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger,* 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997).  While the trier of fact may take note of inconsistencies and resolve or discount them accordingly, such inconsistencies alone do not render a conviction against the manifest weight or sufficiency of the evidence. *State v. Wolters*, 5th Dist. No. 21CA000008, 2022-Ohio-538, 185 N.E.3d 601, ¶ 20.

{¶19} Appellant was convicted of two counts of domestic violence as defined by R.C. 2919.25(A), which provides, "No person shall knowingly cause or attempt to cause physical harm to a family or household member."

{¶20} The victim testified while at her client's residence on October 26, Appellant struck her with his fist and scraped the inside of her mouth with his nails, causing her to bleed. The victim's mother testified the victim returned home that night upset, and she was bleeding. Photographs were admitted into evidence of the towel with spots of blood on it which the victim testified was given to her by her client, and of the victim's facial bruising. The victim testified on October 27, Appellant knocked her down in the hallway of her apartment and struck her. The victim's mother testified she heard the scuffle in the hallway.

{¶21} Appellant testified at trial the victim beat herself in the face on October 26, and he attempted to restrain her. He testified when he left the residence on October 27, she followed him in her car, and tried to get him to get in the car with her. He testified she continued to telephone him while he was in jail. He argues the victim's behavior is inconsistent with her testimony he physically abused her. He argues, based on his own testimony, the victim was bipolar and off her medication, and therefore not a credible witness.

{¶22} The instant case was a bench trial. The trial court, as the trier of fact, made the following statements on the record concerning the credibility of witnesses:

> Yesterday, we spent the day on a bench trial and all of the evidence
> has been presented. The Court spent the evening last night going back

over the evidence. I did review the testimony of all of the witnesses presented.

In fact, I went back and listened again to the testimony of [the victim], [the victim's mother], and Caleb Welch, and then reviewed all of the exhibits again that were presented by both sides.

It's my view that this case is largely about the credibility of the witnesses. In considering that, I do consider, as the rules provide to us, that we are to consider the appearance of each witness on the stand; the reasonableness of that witness's testimony; any interest or bias that witness may have; the witness's frankness, or lack of it; and all the facts and circumstances surrounding that witness's testimony.

I do find credible the testimony of [the victim]. I do find the pictures of the bloody towel and the bloody sweatshirt to be credible. And I find the fact that the bloody towel and her mouth was bloody was buttressed by the testimony of her mother…

I also found Mr. Welch's testimony largely not credible, particularly the testimony about [the victim] hitting herself. His claim that [the victim's mother], strangely, to me felt so strong that she didn't want him to leave the apartment that she tried to block the door, which I didn't find credible at all; and, frankly, I find silly. And then, somehow, she tripped and fell on the ground so forcefully without being pushed by him that she injured her hip and arm.

I also found credible the officers who indicated that, when they arrived, Mr. Welch did not explain any of the things he said during trial, which I think a reasonable person would have done, and then placed his hands behind his back as if expecting to be arrested.

**{¶23}** Tr. (II) 257-59.

**{¶24}** We find the trial court did not lose its way in finding the victim's testimony, which was corroborated by other witnesses and evidence admitted in the case, to be more credible than Appellant's testimony, and the trial court did not lose its way in finding Appellant guilty of two counts of domestic violence.

**{¶25}** The second assignment of error is overruled.

**{¶26}** The judgment of the Delaware County Common Pleas Court is affirmed.

By: Hoffman, P.J.
Baldwin, J. and
King, J. concur